**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON,<br><br>*Plaintiff*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE TREASURY and SCOTT BESSENT, *in his official capacity as Secretary of the United States Department of the Treasury*,<br><br>*Defendants*. | Case No. 1:26-cv-02728-BAH |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS


INTRODUCTION ..... 1

BACKGROUND ..... 3

I. Statutory and Regulatory Background ..... 3

A. The Judgment Fund ..... 3

B. Section 1304(d)'s Public Reporting Provision ..... 3

C. The Privacy Act ..... 4

D. The Paperwork Reduction Act ..... 5

II. Treasury's Judgment Fund Reporting ..... 6

III. CREW's Claims and Requested Relief ..... 7

LEGAL STANDARD ..... 8

ARGUMENT ..... 9

I. CREW Lacks Article III Standing. ..... 9

A. CREW Has Not Alleged a Concrete and Particularized Informational Injury. ..... 10

B. CREW's Asserted Organizational Harms Do Not Establish an Independent Injury in Fact. ..... 12

C. CREW Has Not Established Standing to Obtain the Systemwide Retrospective and Prospective Relief It Seeks. ..... 14

II. FOIA Provides an Adequate Remedy Precluding Review of Counts I and II Under the APA. ..... 15

III. Count I Does Not Identify a Discrete, Final Agency Action Subject to APA Review. ..... 18

IV. Count II Does Not Identify Agency Action Unlawfully Withheld or Unreasonably Delayed. ..... 21

V. Count III Fails to State a Claim Under the PRA. ..... 23

CONCLUSION ..... 25

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Armstrong v. Geithner*,
608 F.3d 854 (D.C. Cir. 2010) .......... 4, 5

*Arpaio v. Obama*,
797 F.3d 11 (D.C. Cir. 2015) .......... 8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 8

*Bartel v. FAA*,
725 F.2d 1403 (D.C. Cir. 1984) .......... 4

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 8

*Bennett v. Spear*,
520 U.S. 154 (1997) .......... 17, 18

*Bowen v. Massachusetts*,
487 U.S. 879 (1988) .......... 14, 15

*Campaign for Accountability v. U.S. Dep't of Just.*,
155 F.4th 724 (D.C. Cir. 2025) .......... 9, 10

*Cannon v. District of Columbia*,
717 F.3d 200 (D.C. Cir. 2013) .......... 8

*Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Just.*,
846 F.3d 1235 (D.C. Cir. 2017) .......... 2, 14, 15, 16

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) .......... 12

*Coker v. Sullivan*,
902 F.2d 84 (D.C. Cir. 1990) .......... 14

*EEOC v. St. Francis Xavier Parochial Sch.*,
117 F.3d 621 (D.C. Cir. 1997) .......... 8

*El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. U.S. Dep't of Health & Hum. Servs.*,
396 F.3d 1265 (D.C. Cir. 2005) .......... 14

*Elec. Priv. Info. Ctr. v. U.S. Dep't of Com.*,
928 F.3d 95 (D.C. Cir. 2019) .................... 9

*FDA v. All. for Hippocratic Med.*,
602 U.S. 367 (2024) .................... 9, 11, 12

*FEC v. Akins*,
524 U.S. 11 (1998) .................... 9

*Food & Water Watch, Inc. v. Vilsack*,
808 F.3d 905 (D.C. Cir. 2015) .................... 11, 12

*Friends of the Earth U.S. v. Export-Import Bank of the United States*,
187 F.4th 616 (D.C. Cir. 2026) .................... 10, 11

*Garcia v. Vilsack*,
563 F.3d 519 (D.C. Cir. 2009) .................... 14

*Gill v. Whitford*,
585 U.S. 48 (2018) .................... 13, 14

*Havens Realty Corp. v. Coleman*,
455 U.S. 363 (1982) .................... 11

*Hurd v. District of Columbia*,
864 F.3d 671 (D.C. Cir. 2017) .................... 8

*Islamic Am. Relief Agency v. Gonzales*,
477 F.3d 728 (D.C. Cir. 2007) .................... 8

*Kareem v. Haspel*,
986 F.3d 859 (D.C. Cir. 2021) .................... 8

*Kissinger v. Reporters Comm. for Freedom of the Press*,
445 U.S. 136 (1980) .................... 15

*Lewis v. Casey*,
518 U.S. 343 (1996) .................... 13

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .................... 8

*Lujan v. Nat'l Wildlife Fed'n*,
497 U.S. 871 (1990) .................... 17

*Nat'l Sec. Archive v. CIA*,
104 F.4th 267 (D.C. Cir. 2024) .............................................................................................. 9

*Nat'l Taxpayers Union, Inc. v. United States*,
68 F.3d 1428 (D.C. Cir. 1995) .............................................................................................. 12

*Norton v. S. Utah Wilderness All.*,
542 U.S. 55 (2004) ........................................................................................... 17, 19, 20, 21

*Paige v. Drug Enf't Admin.*,
665 F.3d 1355 (D.C. Cir. 2012) ............................................................................................ 4, 5

*People for the Ethical Treatment of Animals v. U.S. Dep't of Agric.*,
797 F.3d 1087 (D.C. Cir. 2015) .............................................................................................. 12

*Prisology, Inc. v. Fed. Bureau of Prisons*,
852 F.3d 1114 (D.C. Cir. 2017) .............................................................................................. 10

*Pub. Citizen v. U.S. Dep't of Just.*,
491 U.S. 440 (1989) ................................................................................................................ 9

*Reliable Automatic Sprinkler Co. v. Consumer Product Safety Comm'n*,
324 F.3d 726 (D.C. Cir. 2003) ........................................................................................ 18, 19

*Sierra Club v. EPA*,
No. 25-1112 (RC), 2026 WL 686323 (D.D.C. Mar. 11, 2026)........................................ 11, 22

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ............................................................................................................ 9, 12

*Trudeau v. Fed. Trade Comm'n*,
456 F.3d 178 (D.C. Cir. 2006) .............................................................................................. 19

*Turlock Irrigation Dist. v. FERC*,
786 F.3d 18 (D.C. Cir. 2015) ................................................................................................ 11

*Venetian Casino Resort, L.L.C. v. EEOC*,
530 F.3d 925 (D.C. Cir. 2008) .............................................................................................. 18

*Women's Equity Action League v. Cavazos*,
906 F.2d 742 (D.C. Cir. 1990) ......................................................................................... 14, 15, 16

**Constitutional Provisions**

U.S. Const. art. III, § 2, cl. 1 ..................................................................................................... 8

**Statutes**

5 U.S.C. § 552 .......... 14, 15

5 U.S.C. § 552a .......... 4, 15

5 U.S.C. § 704 .......... 1, 14, 16, 17

5 U.S.C. § 706 .......... *passim*

5 U.S.C. §§ 701-706 .......... 7

28 U.S.C. § 1361 .......... 16

31 U.S.C. § 1304 .......... *passim*

44 U.S.C. § 3501 .......... 5

44 U.S.C. § 3502 .......... 22

44 U.S.C. § 3506 .......... *passim*

44 U.S.C. §§ 3501-3521 .......... 5

John D. Dingell, Jr. Conservation, Management, and Recreation Act, Pub. L. No. 116-9, § 4201(b), 133 Stat. 580 (2019) .......... 3

**Rules**

Federal Rule of Civil Procedure 12 .......... 7, 8

**Regulations**

31 C.F.R. § 256.1 .......... 3

31 C.F.R. § 256.54 .......... 3

Privacy Act of 1974; System of Records, 85 Fed. Reg. 11,776 (Feb. 27, 2020) .......... 4, 5

**Other Authorities**

*Attorney General's Manual on the Administrative Procedure Act* (1947) .......... 19

Bureau of the Fiscal Serv., U.S. Dep't of the Treasury, *Judgment Fund: Annual Report to Congress*, FiscalData.Treasury.gov, https://fiscaldata.treasury.gov/datasets/judgment-fund-report-to-congress/judgment-fund-annual-report-to-congress .......... 6, 18

## INTRODUCTION

Section 1304(d) of Title 31 directs the U.S. Department of the Treasury ("Treasury") to publish specified information concerning Judgment Fund payments. 31 U.S.C. § 1304(d). Treasury publishes Judgment Fund information through biweekly reports and an online payment search tool. Plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") alleges that those resources unlawfully omit claimant names, counsel names, and factual descriptions. Compl. ¶¶ 6-8, 22-23, ECF No. 1. Based principally on three payment entries, CREW asks the Court to set aside Treasury's reporting practices, order Treasury to publish additional information concerning every payment made since January 20, 2025, require correction of unspecified citation codes or descriptions, and prescribe the contents of every future report. Compl., Requested Relief ¶¶ 1-3.

The complaint should be dismissed on threshold and pleading grounds. First, CREW lacks standing because it identifies no request to Treasury for the disputed information, no denial of access, and no concrete consequence particular to CREW. It also acknowledges that "some of the underlying information" it seeks "may be available through other sources." Compl. ¶ 77. CREW's proposed uses for the information—including supplementing public trackers, preparing reports and legislative recommendations, assisting congressional committees, and drafting future requests under the Freedom of Information Act ("FOIA")—describe research and advocacy activities that CREW continues to perform. *Id.* ¶¶ 75-82. Any injury associated with the payments involving Michael Flynn, Carter Page, and the estate of Ashli Babbitt would not support relief governing every past and future Judgment Fund payment.

Second, review of Counts I and II under the Administrative Procedure Act ("APA") is precluded because FOIA provides an adequate remedy. *See* 5 U.S.C. § 704. CREW may request Treasury records containing the information it seeks and obtain de novo judicial review of any

withholding. That remedy is adequate even though FOIA authorizes disclosure to CREW instead of publication on Treasury's website. *See Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Just.*, 846 F.3d 1235, 1243-46 (D.C. Cir. 2017) ("*CREW v. DOJ*"). CREW has not invoked that remedy and may not bypass it through the APA.

Third, each count has an independent pleading defect. Count I identifies no discrete, final agency decision establishing the systemwide practice CREW challenges. The complaint derives that alleged practice from Treasury's continuing administration of the reporting program, three payment entries, and an explanatory webpage. Count II challenges the legal sufficiency of completed payment entries and identifies no agency action remaining "unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Count III invokes the requirement of the Paperwork Reduction Act ("PRA") that agencies ensure "timely and equitable access" to their "public information." 44 U.S.C. § 3506(d)(1). That provision governs access to information an agency makes public and imposes no independent obligation to disclose additional information.

Because these defects require dismissal of each count, the Court is not required to determine whether the Privacy Act or another law prohibits disclosure of particular information associated with any Judgment Fund payment. That inquiry turns on the records and circumstances of each payment. The Court should therefore dismiss the complaint. At a minimum, any surviving claim and corresponding relief should be limited to the particular payment entries for which CREW establishes Article III standing.

## BACKGROUND

### I. Statutory and Regulatory Background

#### A. The Judgment Fund

Congress established the Judgment Fund as a permanent, indefinite appropriation for the payment of certain judgments and settlements against the United States. *See* 31 U.S.C. § 1304; *see also* 31 C.F.R. § 256.1(a). Section 1304 appropriates "[n]ecessary amounts" to pay "final judgments, awards, compromise settlements, and interest and costs specified in the judgments or otherwise authorized by law" when payment is (1) "not otherwise provided for"; (2) "certified by the Secretary of the Treasury;" and (3) payable under one of the authorities enumerated in the statute. 31 U.S.C. § 1304(a)(1)-(3). Treasury administers the Judgment Fund through its Bureau of the Fiscal Service ("Fiscal Service"). Treasury's regulations provide that payment is available when an award or settlement is final and monetary, payable under an authority specified in 31 U.S.C. § 1304(a)(3), and cannot legally be paid from another source of funds. 31 C.F.R. § 256.1(a). Fiscal Service must deny a payment request that fails to satisfy the requirements of 31 U.S.C. § 1304. *Id.* § 256.54.

#### B. Section 1304(d)'s Public Reporting Provision

In 2019, Congress amended the Judgment Fund statute to require public reporting of specified information concerning payments from the Fund. *See* John D. Dingell, Jr. Conservation, Management, and Recreation Act, Pub. L. No. 116-9, § 4201(b), 133 Stat. 580, 764 (2019). Unless disclosure is otherwise prohibited by law or a court order, Treasury is required to publish six categories of information: (1) the name of the agency or entity whose actions gave rise to the claim or judgment; (2) the name of the plaintiff or claimant; (3) the name of counsel for the plaintiff or claimant; (4) the amount paid, including principal and any ancillary liability, such as attorney's

fees, costs, and interest; (5) a brief description of the facts giving rise to the claim; and (6) the name of the agency that submitted the claim. 31 U.S.C. § 1304(d)(1)-(6). Treasury must make that information available on a public website "as soon as practicable, but not later than 30 days after the date on which a payment under this section is tendered." *Id.* § 1304(d).

The reporting obligation is expressly qualified: Treasury must publish the specified information "unless the disclosure of such information is otherwise prohibited by law or a court order." *Id.* The scope of the reporting obligation therefore depends in part on whether statute or court order prohibits disclosure of particular information. One potentially applicable restriction is the Privacy Act of 1974, 5 U.S.C. § 552a.

### C. The Privacy Act

Subject to specified exceptions, the Privacy Act provides that "[n]o agency shall disclose any record which is contained in a system of records" without the written consent of the individual to whom the record pertains. 5 U.S.C. § 552a(b). The Privacy Act defines an "individual" as a United States citizen or lawful permanent resident. *Id.* § 552a(a)(2). A "record" is information about an individual maintained by an agency that contains the individual's name or another identifying particular assigned to the individual, and a "system of records" is a group of agency controlled records from which information is retrieved by an individual's name or another assigned identifier. *Id.* § 552a(a)(4)-(5).

The disclosure restriction generally applies when the information was retrieved from a system of records by reference to a personal identifier. *See Paige v. Drug Enf't Admin.*, 665 F.3d 1355, 1359-60 (D.C. Cir. 2012); *see also Armstrong v. Geithner*, 608 F.3d 854, 857 (D.C. Cir. 2010). The Privacy Act ordinarily does not prohibit disclosure "merely because the information happens to be contained" in a protected record. *Armstrong*, 608 F.3d at 857 (quoting *Bartel v. FAA*,

725 F.2d 1403, 1408 (D.C. Cir. 1984)). Whether the Privacy Act restricts a particular disclosure may therefore depend on the information at issue, the individual to whom the record pertains, the system in which the record is maintained, the manner in which the information was retrieved, and the applicability of a statutory exception.

Fiscal Service maintains a system of records designated "Department of the Treasury, Bureau of the Fiscal Service .002—Payment Records," which covers "[i]ndividuals who are the intended or actual recipients of payments disbursed by the United States Government." Privacy Act of 1974; System of Records, 85 Fed. Reg. 11,776, 11,779 (Feb. 27, 2020). The system contains payee and payment information and permits retrieval through several identifiers such as a person's name, Social Security number, employer identification number, agency supplied identifier, payment date, or trace number. *Id.* Whether information involved in a particular disclosure was actually retrieved through a personal identifier remains a disclosure specific inquiry. See *Paige*, 665 F.3d at 1359-60; *see also Armstrong*, 608 F.3d at 857.

**D. The Paperwork Reduction Act**

The Paperwork Reduction Act ("PRA") establishes a government wide framework for the management and dissemination of federal information. *See* 44 U.S.C. §§ 3501-3521. Among its stated purposes are maximizing the public benefit and utility of information maintained by the federal government; improving the quality and use of federal information to promote governmental accountability and openness; and providing for the dissemination of public information "on a timely basis, on equitable terms, and in a manner that promotes the utility of the information to the public." *Id.* § 3501(2), (4), (7). At the same time, Congress directed that the government's creation, maintenance, use, and dissemination of information remain consistent with applicable laws

governing privacy, confidentiality, security, and public access—including the Privacy Act and FOIA. *Id.* § 3501(8).

Consistent with those general objectives, the PRA assigns agencies responsibilities "[w]ith respect to information dissemination." *Id.* § 3506(d). In particular, each agency must "ensure that the public has timely and equitable access to the agency's public information." *Id.* § 3506(d)(1). The PRA defines "public information" as "any information, regardless of form or format, that an agency discloses, disseminates, or makes available to the public." *Id.* § 3502(12).

## II. Treasury's Judgment Fund Reporting

Fiscal Service makes Judgment Fund payment information available through biweekly payment reports and an online "Judgment Fund Payment Search" tool. Compl. ¶¶ 22-23. The search tool permits users to search for payments by date range or responsible agency and to download payment information in spreadsheet form. *Id.* ¶ 23. Fiscal Service publishes its "Annual Report to Congress" concerning Judgment Fund payments through the Treasury Fiscal Data website. *See* Bureau of the Fiscal Serv., U.S. Dep't of the Treasury, *Judgment Fund: Annual Report to Congress*, FiscalData.Treasury.gov, https://fiscaldata.treasury.gov/datasets/judgment-fund-report-to-congress/judgment-fund-annual-report-to-congress.

Individual plaintiff or claimant names may be omitted when disclosure would be prohibited by the Privacy Act, subject to statutory exceptions. *Id.* Further, descriptions of the facts giving rise to claims may contain personally identifiable information, so Fiscal Service uses a "case citation code and citation code description" because those fields do not contain personally identifiable information and provide "more accurate and consistent information about the reason for the claim." *Id.*

### III. CREW's Claims and Requested Relief

CREW describes itself as a nonprofit organization that promotes government transparency through research, litigation, and advocacy. Compl. ¶ 13. CREW alleges that it uses government records to prepare reports, administrative complaints, requests for investigation, congressional testimony and correspondence, and targeted requests under FOIA. *Id.* ¶¶ 75-76, 81. CREW challenges Treasury's treatment of three categories of information identified in 31 U.S.C. § 1304(d): (1) the names of individual plaintiffs or claimants; (2) the names of their counsel; and (3) brief descriptions of the facts giving rise to their claims. *Id.* ¶¶ 6-8, 85-88. CREW characterizes Treasury's reporting practices as an "across-the-board" policy of withholding those names and factual descriptions and substituting citation codes and citation code descriptions for the factual descriptions that Plaintiff alleges the statute requires. *Id.* ¶¶ 6, 86. The complaint identifies payments associated with claims asserted by Michael Flynn, Carter Page, and the estate of Ashli Babbitt as examples of the alleged deficiencies in Treasury's reporting practices. *Id.* ¶¶ 62-72. CREW alleges that the identities of the claimants and their counsel, as well as the facts underlying their claims, were publicly available through judicial proceedings or other sources and therefore should not have been withheld on Privacy Act grounds. *Id.* ¶¶ 63, 66, 71. CREW also alleges that the citation code descriptions associated with those payments were inaccurate, misleading, or unrelated to the underlying claims. *Id.* ¶¶ 64, 67, 72-74.

CREW alleges that the disputed information would assist it in investigating Judgment Fund payments, maintaining public trackers, preparing reports and legislative recommendations, assisting congressional committees, and formulating targeted FOIA requests. *Id.* ¶¶ 75-82. CREW further alleges that it has submitted FOIA requests for records relating to certain Federal Tort Claims Act ("FTCA") claims and settlement negotiations between DOJ and claimants' counsel

and intends to submit similar requests in the future. *Id.* ¶ 78. The complaint identifies no request to Treasury for the disputed Judgment Fund information and no denial of such a request.

The complaint asserts three claims under the APA, 5 U.S.C. §§ 701-706. Count I alleges that Treasury's reporting practices are "not in accordance with law" under 5 U.S.C. § 706(2)(A). Compl. ¶¶ 83-88. Count II alleges that Treasury has "unlawfully withheld or unreasonably delayed" agency action within the meaning of § 706(1). *Id.* ¶¶ 89-92. Count III alleges that Treasury's reporting practices violate the PRA's direction that agencies ensure "timely and equitable access" to their public information. *Id.* ¶¶ 93-96 (quoting 44 U.S.C. § 3506(d)(1)).

CREW asks the Court to declare unlawful, vacate, and set aside Treasury's challenged reporting practices. Compl., Requested Relief ¶ 1. It also seeks orders requiring Treasury to publish the information CREW contends 31 U.S.C. § 1304(d) requires for every future payment, publish additional information concerning payments made since January 20, 2025, and correct allegedly inaccurate citation codes or descriptions associated with those payments. *Id.* ¶¶ 2-3.

## LEGAL STANDARD

A motion under Federal Rule of Civil Procedure 12(b)(1) challenges the Court's subject matter jurisdiction. Plaintiff bears the burden of establishing subject matter jurisdiction and Article III standing. *See Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). In resolving a facial challenge to standing, the Court accepts the complaint's well pleaded factual allegations as true and draws all reasonable inferences from those allegations in Plaintiff's favor. *Kareem v. Haspel*, 986 F.3d 859, 865-66 (D.C. Cir. 2021). Legal conclusions and "[t]hreadbare recitals" of the elements of standing supported by conclusory assertions receive no presumption of truth. *Id.* at 865-66 (quoting *Arpaio*, 797 F.3d at 19). The presumption of truth likewise does not extend to "inferences that are unsupported by the facts set

out in the complaint." *Id.* at 866 (quoting *Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 732 (D.C. Cir. 2007)).

To survive dismissal under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court accepts well pleaded factual allegations as true and draws reasonable inferences from those allegations in Plaintiff's favor. *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017). In determining whether the complaint states a claim, the Court may consider "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of which [the Court] may take judicial notice." *Id.* (quoting *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997)). The Court may take judicial notice of materials published on official government websites. *See Cannon v. District of Columbia*, 717 F.3d 200, 205 n.2 (D.C. Cir. 2013) (taking judicial notice of a document available on the District of Columbia Retirement Board's website).

## ARGUMENT

### I. CREW Lacks Article III Standing.

Article III limits federal jurisdiction to actual "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. CREW therefore must plausibly allege an injury that is "concrete, particularized, and actual or imminent," fairly traceable to Defendants, and likely to be redressed by the requested relief. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021); *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 380-81 (2024). And because standing "is not dispensed in gross," CREW must establish standing "for each claim that [it] press[es] and for each form of relief that [it] seek[s]." *TransUnion*, 594 U.S. at 431.

CREW has not plausibly alleged standing. Its asserted injury rests on Treasury's alleged failure to publish information to the public and on CREW's anticipated use of additional information in its research and advocacy. *See* Compl. ¶¶ 75-82. The complaint identifies no request by CREW for the disputed information, no denial of access to identified information, and no other concrete consequence sufficient to particularize the asserted deprivation to CREW. Its allegations also do not support relief governing every Judgment Fund payment made since January 20, 2025, and every future payment.

**A. CREW Has Not Alleged a Concrete and Particularized Informational Injury.**

An informational injury may arise when a plaintiff is denied information that a statute requires to be publicly disclosed. *See FEC v. Akins*, 524 U.S. 11, 21 (1998); *Pub. Citizen v. U.S. Dep't of Just.*, 491 U.S. 440, 449 (1989). Article III nevertheless requires the plaintiff to allege a concrete and particularized deprivation. *See TransUnion*, 594 U.S. at 426-27. A plaintiff asserting informational injury therefore must show that it "has been deprived of information that a statute requires the government to disclose to it" and that the deprivation causes "the type of harm Congress sought to prevent by requiring disclosure." *Campaign for Accountability v. U.S. Dep't of Just.*, 155 F.4th 724, 733 (D.C. Cir. 2025) (quoting *Nat'l Sec. Archive v. CIA*, 104 F.4th 267, 272 (D.C. Cir. 2024)) (citation modified); accord *Elec. Priv. Info. Ctr. v. U.S. Dep't of Com.*, 928 F.3d 95, 103 (D.C. Cir. 2019).

CREW has not plausibly alleged such an injury. The complaint challenges Treasury's alleged failure to publish certain Judgment Fund information on a public website. *See* Compl. ¶¶ 6-8, 22-23, 83-96. CREW identifies no request to Treasury for that information and no denial of access. Although CREW alleges that it submitted FOIA requests for records relating to certain FTCA claims and settlement negotiations between DOJ and claimants' counsel, the complaint

does not allege that those requests sought the disputed information from Treasury. *Id.* ¶ 78. Those allegations therefore do not establish that Treasury denied CREW access to the Judgment Fund information at issue here.

The D.C. Circuit's decisions concerning FOIA's reading-room provision—which, like 31 U.S.C. § 1304(d), requires proactive public disclosure—illustrate the distinction between a generalized failure to publish and a particularized informational injury. *See Campaign for Accountability*, 155 F.4th at 730, 733-35; *see also Prisology, Inc. v. Fed. Bureau of Prisons*, 852 F.3d 1114, 1116-17 (D.C. Cir. 2017). An agency's failure to publish required records causes a "harm common to everyone" which, alone, does not establish a particularized injury. *Campaign for Accountability*, 155 F.4th at 734 (quoting *Prisology*, 852 F.3d at 1116-17).

The plaintiff in *Campaign for Accountability* established a particularized injury after requesting particular records and being denied access to them, while the plaintiff in *Prisology* lacked standing because it "made no request of the Bureau of Prisons before bringing suit and therefore received no denial from that agency." *Id.* at 734-35; *Prisology*, 852 F.3d at 1117. CREW alleges no comparable request or denial. Although CREW alleges downstream effects that were not alleged in *Prisology*, those allegations fail to identify a concrete injury particular to CREW.

CREW's intended uses for the information do not supply the requisite concrete harm. CREW alleges that additional information would facilitate its research, public trackers, advocacy, congressional assistance, and preparation of future FOIA requests. Compl. ¶¶ 75-82. Those allegations identify proposed uses for the information without showing that Treasury's reporting practices have inhibited CREW's daily operations or required CREW to undertake substitute services. *Friends of the Earth U.S. v. Export-Import Bank of the United States* illustrates the distinction. 187 F.4th 616, 632-33 (D.C. Cir. 2026). The declarations submitted in *Friends of the*

*Earth* demonstrated that the absence of identified information required the organizations to undertake independent factfinding and impaired their established work advising affected communities. *Id.* CREW alleges no comparable operational consequence. *See* Compl. ¶¶ 75-82.

CREW also acknowledges that "some of the underlying information" it seeks "may be available through other sources" and alleges that Treasury's reporting practices deprive it of "one, definitive source" connecting payments to corresponding claims. Compl. ¶ 77. CREW's acknowledged ability to obtain at least some underlying information elsewhere further weakens its claimed injury from the absence of a centralized source. *See Sierra Club v. EPA*, No. 25-1112 (RC), 2026 WL 686323, at *6-8 (D.D.C. Mar. 11, 2026).

**B. CREW's Asserted Organizational Harms Do Not Establish an Independent Injury in Fact.**

CREW's allegations fail to establish an organizational injury independent of its asserted informational injury. An organization must demonstrate "far more than simply a setback to [its] abstract social interests." *All. for Hippocratic Med.*, 602 U.S. at 394 (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)). And an organization "cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action." *Id.* CREW alleges only that additional Judgment Fund information would assist its reports, public trackers, congressional work, legislative recommendations, and future FOIA requests. Compl. ¶¶ 75-82. Those allegations identify no direct interference with CREW's "core business activities." *All. for Hippocratic Med.*, 602 U.S. at 395. CREW's asserted deprivation must therefore satisfy the requirements for informational standing and cannot independently support organizational standing merely because it allegedly impedes CREW's research and advocacy.

An organizational plaintiff must allege that the challenged conduct "perceptibly impaired the organization's ability to provide services," which resulted in an "inhibition of [its] daily operations." *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 919 (D.C. Cir. 2015) (first quoting *Turlock Irrigation Dist. v. FERC*, 786 F.3d 18, 24 (D.C. Cir. 2015); and then quoting *People for the Ethical Treatment of Animals v. U.S. Dep't of Agric.*, 797 F.3d 1087, 1094 (D.C. Cir. 2015)) (internal quotation marks omitted). Resources devoted to "litigation, investigation in anticipation of litigation, or advocacy" cannot establish the requisite injury. *Id.* at 919–20. Expenditures to educate members or the public likewise must entail "operational costs beyond those normally expended" in furtherance of the organization's advocacy mission. *Id.* at 920 (quoting *Nat'l Taxpayers Union, Inc. v. United States*, 68 F.3d 1428, 1434 (D.C. Cir. 1995)).

The organizational injury recognized in *People for the Ethical Treatment of Animals v. U.S. Department of Agriculture*, 797 F.3d 1087 (D.C. Cir. 2015), is absent here. There, the challenged conduct deprived the organization of information and an avenue for seeking redress, thereby allegedly impairing its preexisting services. *Id.* at 1094-95. While CREW alleges that additional information would improve its existing research and advocacy activities, it identifies no comparable loss of a redress mechanism or direct impediment to a service it provides. *See All. for Hippocratic Med.*, 602 U.S. at 394-96. CREW alleges that the disputed information would permit it to add information to two existing public trackers and support its other research and advocacy activities. Compl. ¶¶ 76-81. CREW thereby seeks additional information to supplement activities it continues to perform, while alleging no interruption of either tracker, need for substitute services, or other concrete interference with its daily operations. *See Food & Water Watch*, 808 F.3d at 919-20. The alleged inability to supplement ongoing advocacy projects with an additional data set does

not establish direct interference with CREW's "core business activities." *All. for Hippocratic Med.*, 602 U.S. at 395.

### C. CREW Has Not Established Standing to Obtain the Systemwide Retrospective and Prospective Relief It Seeks.

CREW's requested relief extends beyond the injuries plausibly alleged in the complaint. Standing "is not dispensed in gross," and CREW must establish standing for each form of relief it seeks. *TransUnion*, 594 U.S. at 431. Prospective relief requires a threatened injury that is "real and immediate," rather than "conjectural" or "hypothetical." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 105-06 (1983). Any remedy must also be "limited to the inadequacy that produced the injury in fact that the plaintiff has established." *Gill v. Whitford*, 585 U.S. 48, 68 (2018) (quoting *Lewis v. Casey*, 518 U.S. 343, 357 (1996)).

The complaint identifies three payments that allegedly illustrate Treasury's reporting practices: payments associated with Michael Flynn, Carter Page, and the estate of Ashli Babbitt. Compl. ¶¶ 62-72. CREW nevertheless asks the Court to set aside Treasury's reporting practices in their entirety, require publication of additional information concerning every Judgment Fund payment made since January 20, 2025, correct unidentified citation codes or descriptions, and govern Treasury's treatment of every future payment. Compl., Requested Relief ¶¶ 1-3. Even assuming CREW has alleged an injury concerning the three identified entries, that injury would not support relief encompassing every other past payment. *See Gill*, 585 U.S. at 68. The complaint alleges no concrete injury to CREW arising from each of the unidentified entries covered by its requested retrospective relief. Any relief addressing past payments must therefore be confined to entries that CREW has identified and shown to have caused it injury.

The same limitation applies prospectively. Even if Treasury's continuing reporting practice poses a sufficiently imminent threat that CREW will encounter again, that threat would not establish an injury arising from every future Judgment Fund payment. Any prospective relief therefore must remain limited to payments as to which CREW faces a sufficiently imminent, concrete injury. See *Gill*, 585 U.S. at 68.

## II. FOIA Provides an Adequate Remedy Precluding Review of Counts I and II Under the APA.

Section 704 limits APA review to "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. That limitation reflects Congress's determination that the APA's general authorization for judicial review should not "duplicate existing procedures for review of agency action" or "provide additional judicial remedies in situations where the Congress has provided special and adequate review procedures." *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988) (citation omitted). Accordingly, "if other remedies are adequate, federal courts will not oversee the overseer." *Women's Equity Action League v. Cavazos*, 906 F.2d 742, 748 (D.C. Cir. 1990) (citing *Coker v. Sullivan*, 902 F.2d 84, 89 (D.C. Cir. 1990)).

In determining whether an alternative remedy is adequate, courts look for "'clear and convincing evidence' of 'legislative intent' to create a special, alternative remedy and thereby bar APA review." *CREW v. DOJ*, 846 F.3d at 1244 (quoting *Garcia v. Vilsack*, 563 F.3d 519, 523 (D.C. Cir. 2009)). The alternative remedy may differ from the relief available under the APA, and relief of the "same genre" may be adequate. *Id.* at 1245 (quoting *El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. U.S. Dep't of Health & Hum. Servs.s*, 396 F.3d 1265, 1272 (D.C. Cir. 2005)). Relevant considerations include whether the alternative scheme provides a cause of action, an established mechanism for judicial review, and judicial authority to redress the plaintiff's asserted injury. See *id.* at 1244-46.

FOIA provides those features here. CREW may submit a request to Treasury that "reasonably describes" the Judgment Fund records it seeks. 5 U.S.C. § 552(a)(3)(A). Upon receiving a proper request, Treasury would be required to search for responsive records, produce responsive nonexempt records, and justify any withholding in subsequent litigation. *See* 5 U.S.C. § 552(a)(3)(A), (a)(4)(B). FOIA authorizes de novo judicial review and empowers the Court "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." *Id.* § 552(a)(4)(B). That procedure would permit CREW to obtain records containing the disputed information and secure judicial review of Treasury's grounds for withholding records associated with identified Judgment Fund payments.

FOIA's remedial structure supplies the requisite evidence of congressional intent. *See CREW v. DOJ*, 846 F.3d at 1244-45. In *CREW v. DOJ*, the D.C. Circuit relied on FOIA's express cause of action, de novo judicial review, and "carefully balanced scheme of public rights and agency obligations designed to foster greater access to agency records." 846 F.3d at 1244-45 (quoting *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980)). The court concluded that FOIA constitutes the type of "special and adequate review procedure[]" that precludes duplicative APA review. *Id.* at 1245-46 (alteration in original) (quoting *Bowen*, 487 U.S. at 903). That same remedial scheme is available to CREW here.

The fact that 31 U.S.C. § 1304(d)'s reporting obligation and FOIA's remedial scheme arise under different statutes does not render FOIA's remedy inadequate. "Situation-specific litigation" provides "an adequate, even if imperfect, remedy," although it is "less effective in providing systemic relief." *Women's Equity Action League*, 906 F.2d at 751. FOIA likewise permits CREW to request records associated with particular Judgment Fund payments and challenge any

withholding, even though it does not authorize the systemwide website publication order CREW seeks here.

The Privacy Act reinforces FOIA's role as the appropriate channel for obtaining the disputed information. The Privacy Act permits disclosure when FOIA requires it—the same statutory exception on which CREW relies. *See* 5 U.S.C. § 552a(b)(2); Compl. ¶¶ 7, 87. FOIA thereby permits record specific adjudication of CREW's entitlement to records containing the information it seeks.

CREW alleges that Treasury's reporting practices prevent it from obtaining and using information associated with Judgment Fund payments. *See* Compl. ¶¶ 75-82. FOIA provides a direct means of requesting records containing that information and obtaining judicial review of any withholding. CREW nevertheless seeks an APA order requiring Treasury to publish the information on a public website. *See* Compl., Requested Relief ¶¶ 1-3. The difference in the form of relief is one the D.C. Circuit addressed in *CREW v. DOJ*: FOIA remained adequate even though it authorized disclosure to the requester rather than publication to the public. 846 F.3d at 1243-46. "True, courts lack authority under FOIA to order agencies to 'make [records] available for public inspection.'" *Id.* at 1246 (alteration in original) (quoting 5 U.S.C. § 552(a)(2)). The relevant point was that "CREW itself can gain access to all the records it seeks." *Id.* Thus, "despite some mismatch between the relief sought and the relief available," FOIA supplied an adequate remedy. *Id.*

CREW has not invoked that remedy for the information challenged here. The complaint alleges that CREW has submitted other FOIA requests concerning FTCA claims and related settlement negotiations. Compl. ¶ 78. However, it identifies no request to Treasury for records containing the claimant names, counsel names, or factual information at issue in this action. CREW

instead seeks systemwide public disclosure under the APA without first employing the statutory process through which it could request identified records and obtain de novo review of Treasury's response.[1]

Counts I and II seek access to information that CREW may pursue through FOIA. Count I characterizes Treasury's reporting practices as contrary to 31 U.S.C. § 1304(d), and Count II characterizes the same alleged nondisclosure as agency action unlawfully withheld or unreasonably delayed. Compl. ¶¶ 83-92. Those characterizations do not alter the substance of CREW's asserted injury or overcome § 704's limitation. FOIA's record specific remedy remains adequate even though CREW may need to request records associated with particular payments after those records come into existence. *See Women's Equity Action League*, 906 F.2d at 751. Because FOIA provides an adequate remedy for CREW's alleged inability to obtain the disputed information, Counts I and II should be dismissed under Rule 12(b)(6).

### III. Count I Does Not Identify a Discrete, Final Agency Action Subject to APA Review.

The APA authorizes review of "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. "Agency action" is a term of art encompassing "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof." *Id.* § 551(13). Each category involves "circumscribed, discrete agency actions." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62 (2004) ("*SUWA*"). The identified action also must be final: it must "mark the 'consummation' of the agency's decisionmaking process" and constitute an action "by

[1] To the extent CREW seeks an order under the Mandamus Act compelling Treasury to publish the disputed information, that claim also fails. *See* 28 U.S.C. § 1361; Compl. ¶ 11. Mandamus is an extraordinary remedy available only when the plaintiff has a clear right to relief, the defendant owes a clear and nondiscretionary duty, and no adequate alternative remedy exists. *See Women's Equity Action League*, 906 F.2d at 752. Because FOIA provides CREW an adequate means of requesting the information and obtaining judicial review of any withholding, mandamus relief is unavailable.

which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (citations omitted).

These requirements foreclose challenges to an agency's administration of a program at large. A plaintiff "cannot seek wholesale improvement of [a] program by court decree" and must "direct its attack against some particular 'agency action' that causes it harm." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990) (emphasis omitted); *see also SUWA*, 542 U.S. at 64 (explaining that the discrete action requirement precludes "broad programmatic attack[s]"). Describing an agency's continuing course of conduct as a "policy" does not, by itself, identify the circumscribed agency action required for APA review.

Count I identifies no discrete and final agency action through which Treasury adopted the asserted systemwide policy and produced the legal consequences required by § 704. CREW alleges that Treasury follows an "across-the-board policy" of omitting claimant names, counsel names, and factual descriptions from Judgment Fund reports. Compl. ¶¶ 6, 86. The complaint derives that alleged policy from Treasury's continuing reporting practices, three individual payment entries, and explanatory material published on Fiscal Service's website without identifying circumscribed agency determination adopting the alleged policy that consummated Treasury's decisionmaking process and generated legal consequences. *See id.* ¶¶ 6, 22-23, 62-74.

The individual payment entries do not constitute the systemwide agency action alleged in the complaint. Each entry concerns Treasury's treatment of information associated with a particular payment and may implicate different source records, retrieval methods, statutory restrictions, and court orders. Disclosure is required only when it is not "otherwise prohibited by law or a court order." 31 U.S.C. § 1304(d). The three entries discussed in the complaint present discrete questions limited to those particular payments. Treating them as a single agency action

governing all payments made since January 20, 2025 and every future payment would impermissibly aggregate distinct payment specific determinations.

Fiscal Service's explanatory webpage likewise does not constitute the final agency action alleged in Count I. *See* Bureau of the Fiscal Serv., U.S. Dep't of the Treasury, *Annual Report to Congress*, https://fiscal.treasury.gov/payments-from-government/judgment-fund/annual-report-congress (last updated Jan. 31, 2023). The webpage describes Fiscal Service's reporting practices and provides Treasury's explanation for omitting or replacing certain information. CREW alleges no facts demonstrating that the webpage consummated a decisionmaking process, independently determined any person's rights or obligations, or produced legal consequences concerning every Judgment Fund payment. *See Bennett*, 520 U.S. at 177-78; *see also Reliable Automatic Sprinkler Co. v. Consumer Product Safety Comm'n*, 324 F.3d 726, 731-33 (D.C. Cir. 2003).

The contrasting circumstances in *Venetian Casino Resort, L.L.C. v. EEOC*, 530 F.3d 925 (D.C. Cir. 2008) underscore what is missing here. There, a developed summary judgment record—including the agency's failure to dispute the plaintiff's statement of material facts and concessions by agency counsel—established that the agency had adopted a policy permitting disclosure of confidential information without notice. *Id.* at 929-31. The court emphasized that the reviewable action was "the decision of the Commission to adopt a policy." *Id.* at 931. Here, the complaint identifies Treasury's reporting practices, individual payment entries, and an explanatory webpage, but identifies no discrete agency decision adopting the asserted systemwide policy. *See* Compl. ¶¶ 6, 22-23, 62-74.

Even assuming that the three payment entries qualify as discrete and final agency actions, any review under Count I would be limited to Treasury's treatment of the particular information associated with those entries. The entries cannot sustain CREW's broader challenge to an asserted

policy governing all past and future payments. Because Count I identifies no discrete and final agency action adopting that systemwide policy, the broader challenge should be dismissed under Rule 12(b)(6). *See Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 184-85, 188-89 (D.C. Cir. 2006); *see also Reliable Automatic Sprinkler*, 324 F.3d at 731-33.

## IV. Count II Does Not Identify Agency Action Unlawfully Withheld or Unreasonably Delayed.

Section 706(1) authorizes a reviewing court to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Relief under that provision is available only when "an agency failed to take a discrete agency action that it is required to take." *SUWA*, 542 U.S. at 64. The action must be both discrete and compelled by "a specific, unequivocal command." *Id.* at 63-65. Section 706(1) permits a court to require an agency to take an omitted action, while preserving the agency's authority over "how it shall act." *Id.* at 64 (quoting *Attorney General's Manual on the Administrative Procedure Act* 108 (1947)).

A "failure to act" is "the omission of an action without formally rejecting a request—for example, the failure to promulgate a rule or take some decision by a statutory deadline." *Id.* at 63. A denial, by contrast, is "the agency's act of saying no to a request." *Id.* This distinction separates a claim seeking completion of an omitted agency action under § 706(1) from a challenge to the legal sufficiency of completed agency action under § 706(2). *See id.* at 62-65.

Count II challenges action Treasury has already taken. The complaint acknowledges that Fiscal Service publishes biweekly Judgment Fund reports and maintains an online payment search tool. Compl. ¶¶ 22-23. It identifies published entries that CREW alleges correspond to the Flynn, Page, and Babbitt payments. *Id.* ¶¶ 64, 67, 72. CREW contends that those entries omit claimant and counsel names, substitute citation code descriptions for factual descriptions, and contain inaccurate descriptions. *Id.* ¶¶ 64, 67, 72-74, 88, 92. CREW's theory is therefore that completed

reporting entries fail to comply with 31 U.S.C. § 1304(d). That theory challenges the lawfulness of completed agency action and falls, if anywhere, within § 706(2). *See SUWA*, 542 U.S. at 62-65.

The relationship between Counts I and II confirms that characterization. Count I alleges that Treasury's reporting practices are "not in accordance with law" because the completed entries omit information CREW believes 31 U.S.C. § 1304(d) requires. Compl. ¶¶ 83-88. Count II relies on the same omissions and alleges that Treasury failed to discharge its reporting obligations in a "timely and fulsome manner." *Id.* ¶¶ 89-92. Characterizing each disputed field as agency action "unlawfully withheld" would collapse the distinction between an objection to the legal sufficiency of completed action and a claim seeking performance of an omitted act. Treasury published entries concerning the identified payments, and CREW disputes whether those entries contain the information required by 31 U.S.C. § 1304(d). Count II therefore duplicates Count I's challenge to the lawfulness of completed agency action.

31 U.S.C. § 1304(d)'s 30 day deadline does not convert CREW's challenge to completed reports into a failure-to-act claim. 31 U.S.C. § 1304(d) directs Treasury to make specified information available "as soon as practicable, but not later than 30 days after the date on which a payment under this section is tendered." 31 U.S.C. § 1304(d). The complaint identifies published reporting entries that CREW alleges correspond to each of the three payments. Compl. ¶¶ 64, 67, 72. Its theory concerns whether those entries contain all the information 31 U.S.C. § 1304(d) requires. That theory challenges the legal sufficiency of completed agency action and therefore falls within § 706(2). *See SUWA*, 542 U.S. at 62-65. Section 706(1) permits a court to compel discrete, legally required agency action that has been withheld or unreasonably delayed. *Id.* at 64.

To the extent Count II relies on CREW's allegation that Treasury failed to make a "considered determination" whether another law prohibits disclosure "in each instance," Compl. ¶ 88, § 706(1) provides no basis for compelling that additional decisional process. 31 U.S.C. § 1304(d) conditions disclosure on whether disclosure is "otherwise prohibited by law or a court order," but prescribes no formal determination, documentation requirement, or particular decisional procedure that Treasury must undertake before publishing an entry. 31 U.S.C. § 1304(d). Section 706(1) authorizes a court to compel only agency action that the governing statute specifically requires and cannot be used to impose procedures absent from the statute. *See SUWA*, 542 U.S. at 65.

Count II therefore challenges the asserted deficiencies in reporting entries Treasury has completed and identifies no distinct agency action remaining unlawfully withheld or unreasonably delayed. For that reason, Count II should be dismissed under Rule 12(b)(6).

## V. Count III Fails to State a Claim Under the PRA.

Count III alleges that Treasury's reporting practices violate the PRA by denying the public "timely and equitable access" to Treasury's public information. Compl. ¶¶ 93-96 (quoting 44 U.S.C. § 3506(d)(1)). Section 3506(d)(1) directs agencies to "ensure that the public has timely and equitable access to the agency's public information" such as through access to underlying electronic data and the efficient dissemination of public information. 44 U.S.C. § 3506(d)(1)(A)-(C). Section 3506(d)(1) governs access to information an agency makes public, while the scope and content of Treasury's Judgment Fund disclosures are prescribed by 31 U.S.C. § 1304(d).

The PRA's definition of "public information" reinforces that interpretation. The term means "any information, regardless of form or format, that an agency discloses, disseminates, or makes available to the public." 44 U.S.C. § 3502(12). Section 3506(d)(1) therefore governs access

to information an agency makes public. 31 U.S.C. § 1304(d) separately determines which Judgment Fund information Treasury must disclose.

A recent decision in this Court applied that reading of § 3506(d)(1) when evaluating a claimed informational injury arising from the removal of online environmental tools. *Sierra Club*, 2026 WL 686323, at *6-8 (D.D.C. Mar. 11, 2026). The Court explained that § 3506 "is not a public-disclosure law." *Id.* at *6. It further explained that "[n]othing in the statute . . . explicitly requires an agency to make certain information public" and that the provision concerns access to information "once it has been distributed to the public." *Id.*

Count III fails under that interpretation. Plaintiff seeks claimant names, counsel names, and factual descriptions that Treasury allegedly omitted from its public reports. Compl. ¶¶ 6-8, 22, 95-96. 31 U.S.C. § 1304(d) identifies the Judgment Fund information Treasury must publish and qualifies that obligation when disclosure is "otherwise prohibited by law or a court order." 31 U.S.C. § 1304(d). Section 3506(d)(1) neither adds to the categories enumerated in 31 U.S.C. § 1304(d) nor alters that statutory qualification. Plaintiff's entitlement to the disputed information therefore turns on 31 U.S.C. § 1304(d), which supplies the governing disclosure requirements.

Treasury's biweekly reports and payment search tool are publicly accessible. *See* Compl. ¶¶ 22-23. Plaintiff challenges the categories of information contained in those resources and alleges no delay or unequal treatment in accessing the published contents. Section 3506(d)(1) supplies no legal standard requiring additional data fields in Judgment Fund reports.

Because § 3506(d)(1) imposes no independent obligation to disclose the information Plaintiff seeks, the PRA provides no basis for setting aside Treasury's reporting practices under 5 U.S.C. § 706(2)(A). Count III should therefore be dismissed under Rule 12(b)(6).

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion and dismiss the complaint. Alternatively, any surviving claim and corresponding relief should be limited to the particular payment entries for which CREW establishes Article III standing.

October 13, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ELIZABETH J. SHAPIRO
Deputy Director

*<u>/s/ Kian K. Azimpoor</u>*
KIAN K. AZIMPOOR (DC Bar No. 90024613)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Tel: (202) 598-0860; Fax: (202) 616-8470
E-mail: kian.k.azimpoor@usdoj.gov

*Counsel for Defendants*